UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 4:17-CR-198-SDJ |
| | § | |
| MARIA CALBAJAL-PONCE (8) | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Maria Calbajal-Ponce's Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A). (Dkt. #535). The Government has filed a response in opposition, (Dkt. #546), and Calbajal-Ponce has replied, (Dkt. #551). Having considered the parties' filings, the record, and the applicable law, the Court **DENIES** Calbajal-Ponce's motion.

### I. BACKGROUND

Calbajal-Ponce is currently serving a 210-month term of imprisonment at FCI Aliceville for conspiracy to possess with the intent to manufacture and distribute methamphetamine, in violation of 18 U.S.C. § 846. Her anticipated release date is December 7, 2033. Citing risks to her health associated with the COVID-19 pandemic and relying on 18 U.S.C. § 3582(c)(1)(A), Calbajal-Ponce requests that the Court reduce her sentence to time served and order her released from prison.

Before Calbajal-Ponce filed this motion, she submitted a request for compassionate release to her warden, claiming that she suffers from asthma, hypertension, sleep apnea, and anemia. Calbajal-Ponce asserted that the risk created by the COVID-19 pandemic, coupled with her underlying health conditions,

1

constitutes an extraordinary and compelling reason warranting her release from prison. The warden denied Calbajal-Ponce's request.

Calbajal-Ponce subsequently filed a compassionate-release motion in this Court, seeking a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). Again, Calbajal-Ponce argues that her underlying health conditions, combined with the risks created by the COVID-19 pandemic, present an extraordinary and compelling reason warranting a reduction in her sentence. (Dkt. #165 at 7).

## II. DISCUSSION

### A. 18 U.S.C. § 3582(c)(1)(A)

A judgment of conviction imposing a sentence of imprisonment "'constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824, 130 S.Ct. 2683, 177 L.Ed.2d 271 (2010) (quoting 18 U.S.C. § 3582(b)); *see also* 18 U.S.C. § 3582(c). One such circumstance arises from 18 U.S.C. § 3582(c)(1)(A)(i), commonly referred to as compassionate release.

Section 3582(c) was enacted as part of the Sentencing Reform Act of 1984. Under the first iteration of the relevant provision, district courts were authorized to grant sentence reductions on the motion of the Director of the Bureau of Prisons ("BOP") if the BOP could establish the following conditions: (1) extraordinary and compelling reasons warranted a sentence reduction; (2) a reduction would be consistent with the applicable policy statements of the Sentencing Commission; and (3) a sentence reduction was warranted after consideration of the sentencing factors

in 18 U.S.C. § 3553(a). *United States v. Shkambi*, 993 F.3d 388, 391 (5th Cir. 2021). Notably, Congress did not define "extraordinary and compelling reasons" or otherwise indicate how that phrase should be interpreted other than to specify that rehabilitation alone did not qualify. *Id.* (quoting 28 U.S.C. § 994(t)). Instead, Congress delegated that authority to the Sentencing Commission, directing it to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t).

The Sentencing Commission eventually followed Congress's direction to define "extraordinary and compelling reasons" and promulgated U.S.S.G. § 1B1.13. In application note 1 to Section 1B1.13, the Sentencing Commission described what circumstances constitute "extraordinary and compelling reasons" for purposes of Section 3582(c)(1)(A)(i). U.S.S.G. § 1B1.13 cmt. n.1. The Sentencing Commission essentially created four categories of "extraordinary and compelling reasons," which can broadly be characterized as: (1) circumstances arising from certain medical conditions; (2) circumstances arising from the age of the defendant; (3) issues arising from the defendant's family circumstances; and (4) other reasons that the BOP agrees are extraordinary and compelling in a specific case. *Id.* And because Section 3582(c)(1)(A) requires that any sentence reduction be consistent with the Sentencing Commission's policy statements issued pursuant to Section 994(t), the policy statements contained in Section 1B1.13 were binding on district courts considering Section 3582(c)(1)(A)(i) motions. *See United States v. Garcia*, 655 F.3d 426, 435 (5th Cir. 2011) (holding that the Sentencing Commission's policy statements

3

issued pursuant to 28 U.S.C. § 994 are binding on district courts when considering motions brought under 18 U.S.C. § 3582(c)).

In 2018, Congress amended Section 3582(c)(1)(A) with the passage of the First Step Act. The amendment provided that, in cases where the BOP does not file a compassionate-release motion on the prisoner's behalf, the prisoner may personally file a motion for compassionate release. *Shkambi*, 993 F.3d at 391–92. This was the First Step Act's only change to the compassionate-release framework. *Id.* at 391. Thus, while prisoners, in addition to the BOP, may now file motions for compassionate release, Section 3582(c)(1)(A)(i)'s substantive requirements that govern a prisoner's entitlement to release remain the same. *See id.* at 392 ("But the [First Step Act] left undisturbed the other three § 3582 requirements.").

Following the First Step Act's expansion of who may file a motion under Section 3582(c)(1)(A), courts were confronted with the question of whether the Sentencing Commission's definition of "extraordinary and compelling reasons," which was promulgated prior to the First Step Act when such motions could only be filed by the BOP, remained binding on district courts when considering compassionate-release motions. The Fifth Circuit addressed this question in *Shkambi*, holding that, while U.S.S.G. § 1B1.13 is a policy statement applicable to Section 3582(c)(1)(A) motions filed by the BOP, it is inapplicable to Section 3582(c)(1)(A) motions filed by prisoners. 993 F.3d at 392.[1] Accordingly, while U.S.S.G. § 1B1.13 dictates the

---

[1] Several other circuits have similarly concluded that U.S.S.G. § 1B1.13 is inapplicable to such compassionate-release motions filed by prisoners. *See, e.g.*, *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) (per curiam); *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020); *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020). *But see United*

4

meaning of "extraordinary and compelling reasons" when a Section 3582(c)(1)(A) motion is filed by the BOP on a prisoner's behalf, it does not do so when, as here, a Section 3582(c)(1)(A) motion is filed by a prisoner himself. *See id.* ("[T]he policy statement continues to govern where it says it governs—on the motion of the Director of the Bureau of Prisons. But it does not govern here—on the newly authorized motion of a prisoner." (quotation omitted)). Therefore, when a prisoner files a compassionate-release motion, courts must determine what constitutes an "extraordinary and compelling reason" under Section 3582(c)(1)(A)(i).

**B. Extraordinary and Compelling Reasons**

Though the Court is not bound by the Sentencing Commission's policy statement in U.S.S.G § 1B1.13 and its accompanying application notes when considering compassionate-release motions filed by prisoners, the policy statement is not wholly irrelevant. Courts should still look to the policy statement for guidance in determining what constitute "extraordinary and compelling reasons" for a sentence reduction when a prisoner files a compassionate-release motion. *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) ("Although not dispositive, the commentary to the United States Sentencing Guidelines ('U.S.S.G.') § 1B1.13 informs our analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."); *see also, e.g.*, *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) ("The substantive aspects of the Sentencing Commission's analysis in § 1B1.13 and its Application Notes provide a working definition of

---

*States v. Bryant*, 996 F.3d 1243, 1248 (11th Cir. 2021) (holding that U.S.S.G. § 1B1.13 is an applicable, binding policy statement for all Section 3582(c)(1)(A) motions).

5

'extraordinary and compelling reasons'; a judge who strikes off on a different path risks an appellate holding that judicial discretion has been abused."). Using the policy statement as guidance when considering prisoner-filed compassionate-release motions is warranted for several reasons.

First, whether a compassionate-release motion is filed by the BOP or a defendant, the statutory standard governing the motion is the same. Section 3582(c)(1)(A) provides that its requirements for obtaining a sentence reduction apply "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant." 18 U.S.C. § 3582(c)(1)(A). And as noted above, the First Step Act did not change Section 3582(c)(1)(A)'s substantive requirements. Thus, a policy statement defining "extraordinary and compelling reasons" in the context of BOP-filed motions necessarily informs what "extraordinary and compelling" means in the context of defendant-filed motions because the same standard governs both motions. In other words, Section 3582(c)(1)(A)(i)'s "extraordinary and compelling reasons" phrase does not implicate shifting substantive meanings depending on who invokes the statute.

Congress's application of a single standard to govern Section 3582(c)(1)(A) motions—whether filed by the BOP or by defendants—is also evident in Section 3582(c)(1)(A)'s exhaustion requirement. Before a prisoner can file a compassionate-release motion, he must first present his case to the BOP and request that the BOP file the motion on his behalf. *See* 18 U.S.C. § 3582(c)(1)(A). Fulfilling this exhaustion requirement would be a nonsensical exercise if the standard

governing the defendant's entitlement to release varied significantly depending on whether the BOP grants the defendant's request. Defendants would request compassionate release based on the interpretation of "extraordinary and compelling reasons" applicable to their motions while the BOP would evaluate such requests based on the interpretation applicable to its motions. The fact that defendants must first ask the BOP to file their compassionate-release motions before doing it themselves indicates that Congress intended no significant substantive distinction between BOP-filed and defendant-filed motions under Section 3582(c)(1)(A).

Using U.S.S.G. § 1B1.13 and its commentary as guidance to determine what is extraordinary and compelling in defendant-filed motions is further warranted by Congress's mandate that the Sentencing Commission, rather than courts, determine what constitute "extraordinary and compelling reasons" warranting a sentence reduction under Section 3582(c)(1)(A)(i). *See* 28 U.S.C. § 994(t) (directing the Sentencing Commission to issue policy statements describing what constitute extraordinary and compelling reasons under Section 3582(c)(1)(A)); *Garcia*, 655 F.3d at 435 (concluding that Congress intended the Sentencing Commission's policy statements to be binding on courts in Section 3582(c) proceedings). To be sure, the Fifth Circuit has held that there is no binding policy statement because the Sentencing Commission has yet to amend its guidelines to account for the fact that defendants can now file compassionate-release motions. *See Shkambi*, 993 F.3d at 392. But Section 1B1.13 and its commentary still provide substantial insight into what the Sentencing Commission considers to be an "extraordinary and compelling

7

reason" because the statutory standard the Sentencing Commission was applying when it promulgated Section 1B1.13 has not changed.

Nor does Section 1B1.13 become useless as guidance for defendant-filed compassionate-release motions simply because its terms state that it applies to motions brought by the Director of the BOP. Section 1B1.13 and its accompanying application notes "provide a working definition of 'extraordinary and compelling reasons'"—the standard that applies equally to BOP motions and prisoner motions. *Gunn*, 980 F.3d at 1180. Indeed, when the Sentencing Commission promulgated Section 1B1.13, its intent was not to specify a unique standard for BOP motions but rather to define "extraordinary and compelling reasons" for purposes of Section 3582(c)(1)(A). 28 U.S.C. § 994(t) does not direct the Sentencing Commission to adopt standards governing prisoner motions and standards governing BOP motions. Rather, Section 994(t) directs the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction" under Section 3582(c)(1)(A). And as the Sentencing Commission itself has explained, U.S.S.G. § 1B1.13 and its application notes constitute the Commission's implementation of Section 994(t)'s directive. *See* U.S.S.G. § 1B1.13 cmt. background ("This policy statement implements 28 U.S.C. § 994(a)(2) and (t)."). Because Section 3582(c)(1)(A) governs BOP motions and prisoner motions alike, the Sentencing Commission's definition of Section 3582(c)(1)(A)'s terms is instructive when considering a prisoner's motion brought under Section 3582(c)(1)(A)(i).

For these reasons, the Court concludes that the "extraordinary and compelling reasons" applicable to defendant-filed motions are those that are similar in kind and scope to those listed in U.S.S.G. § 1B1.13's application notes. Therefore, any proffered "extraordinary and compelling reason" that is not contained in the Sentencing Commission's policy statement should nonetheless be similar to those reasons in order to warrant release under the statute. In this sense, the Court's analysis of whether Calbajal-Ponce has presented "extraordinary and compelling reasons" warranting the sentence reduction he seeks will be significantly guided, though not strictly bound, by the Sentencing Commission's description in U.S.S.G. § 1B1.13 and the accompanying application notes.

### C. Calbajal-Ponce's Motion

#### 1. Exhaustion

As an initial matter, the Court may consider Calbajal-Ponce's compassionate-release motion only if she first meets Section 3582(c)(1)(A)'s exhaustion requirement. A court may not consider any modification to a defendant's sentence under Section 3582(c)(1)(A)(i) unless a motion for such a modification is made by the Director of the BOP or by a defendant who has fully exhausted his or her administrative remedies. 18 U.S.C. § 3582(c)(1)(A). It is undisputed that Calbajal-Ponce has met the exhaustion requirement. Calbajal-Ponce requested compassionate release from the warden of her facility on the grounds asserted before this Court, and the warden denied her request. *See* (Dkt. #535-2); *see also* 28 C.F.R. § 571.61(a) (providing that a

9

prisoner's Section 3582(c)(1)(A) request for compassionate release must be submitted to the warden of his or her facility).

**2. "Extraordinary and Compelling Reasons" Warranting Release**

Although Calbajal-Ponce has satisfied the threshold exhaustion requirement, her motion must be denied because she has failed to present "extraordinary and compelling reasons" within the meaning of Section 3582(c)(1)(A)(i). Calbajal-Ponce argues that her asthma, obesity, and anemia, which place her at a higher risk of complications should she become infected with COVID-19, coupled with the COVID-19 public-health crisis, constitute an extraordinary and compelling reason warranting her release. As explained above, the Court first looks to the Sentencing Commission's definition of "extraordinary and compelling reasons" contained in U.S.S.G. § 1B1.13 and its application notes.

Calbajal-Ponce's circumstances do not fall within the first category of "extraordinary and compelling reasons" identified by the Sentencing Commission—circumstances arising from certain medical conditions. Section 1B1.13's application note 1 provides the following two circumstances under which a defendant's medical condition may warrant a sentence reduction:

> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—
>     (I) suffering from a serious physical or medical condition,
>     (II) suffering from a serious functional or cognitive impairment, or

>   (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G § 1B1.13 cmt. n.1(A). Although Calbajal-Ponce asserts that she is presently suffering from asthma, obesity, and anemia, she does not show that these conditions, which the record reveals can be effectively managed with medication, render her unable to engage in self-care. Rather, Calbajal-Ponce fears that her health conditions could make her more susceptible to developing a serious medical condition should she contract COVID-19.

Any suggestion that Calbajal-Ponce's underlying medical conditions, coupled with the risk of contracting COVID-19, substantially diminish her ability to provide self-care due to her conditions of confinement does not comport with the plain text of application note 1 to U.S.S.G. § 1B1.13. The note is written in the present tense. That is, the defendant must be presently suffering from a serious medical condition and such condition must presently diminish the defendant's capacity to engage in self-care in the environment of a correctional facility. By contrast, Calbajal-Ponce's motion relies on the risk of her contracting COVID-19 in the future and the risk that COVID-19 would have serious effects on her.

In addition, Calbajal-Ponce's inability to engage fully in proactive measures to minimize the risk of contracting COVID-19 is not caused by her chronic health conditions. So even if Calbajal-Ponce's asthma, obesity, and anemia were serious medical conditions, she has not shown how these conditions prevent her from

11

providing self-care. To the contrary, the record indicates that Calbajal-Ponce's health issues have been effectively managed with medication and clinician evaluations every six to twelve months. Thus, Calbajal-Ponce's concerns about the risks of COVID-19 do not fall within the "extraordinary and compelling reasons" enumerated by the Sentencing Commission in its commentary to U.S.S.G. § 1B1.13.

Because the Fifth Circuit has held that the Sentencing Commission's definition of "extraordinary and compelling reasons" governs Section 3582(c)(1)(A)(i) motions only when such motions are filed by the BOP, Calbajal-Ponce's failure to show that her circumstances fall within those described by the Sentencing Commission is not fatal to her motion. But as discussed above, the Court still looks to the Sentencing Commission's definition of "extraordinary and compelling reasons" as significant guidance in construing that phrase as to defendant-filed motions. *See Thompson*, 984 F.3d at 433 (noting that the Sentencing Commission's commentary "informs [the] analysis" as to what constitute "extraordinary and compelling reasons" for defendant-filed compassionate-release motions). Accordingly, Calbajal-Ponce's allegedly extraordinary and compelling reasons should be similar in kind to those enumerated by the Sentencing Commission.

The reasons Calbajal-Ponce asserts as a basis for her release are unlike any of the reasons enumerated by the Sentencing Commissions in its commentary to U.S.S.G. § 1B1.13. The circumstances in application note 1 all include significant hardships that are *presently* affecting the defendant, including where a medical condition or the aging process is presently causing the significant health problems or

where the defendant has minor children or an incapacitated spouse who are presently left without a caregiver because of the defendant's incarceration. By contrast, Calbajal-Ponce argues that she should be released because incarceration increases her risk of contracting COVID-19 and her medical conditions increase her risk of having complications from COVID-19.

Of course, neither Calbajal-Ponce's infection with COVID-19 nor her experiencing serious complications after infection is guaranteed. Calbajal-Ponce's motion does not identify any specific, significant hardship that she presently faces; rather, the motion raises only the concern that Calbajal-Ponce is at risk for developing a significant hardship in the future *if* she contracts COVID-19. There is no analogous provision in Section 1B1.13 or its commentary where the increased *risk* of hardship caused by incarceration is considered an "extraordinary and compelling reason" as that phrase is used in 18 U.S.C. § 3582(c)(1)(A)(i). Thus, the risk Calbajal-Ponce faces from the virus, whether considered alone or in conjunction with her underlying conditions, does not constitute an extraordinary and compelling reason within the meaning of Section 3582(c)(1)(A)(i). And because Section 3582(c)(1)(a)(i) authorizes sentence reductions only for "extraordinary and compelling reasons" within the meaning of the statute, the Court will deny Calbajal-Ponce's motion.

### 3. Section 3553(a) Factors

Even if Calbajal-Ponce could establish that "extraordinary and compelling reasons" warrant her release, her motion for compassionate release would still fail because the sentencing factors under 18 U.S.C. § 3553(a) weigh against her. Calbajal-

Ponce has failed to show how releasing her before she serves the full term (or a much more significant portion) of her sentence would align with the statutory sentencing factors—notably the seriousness of her offense, the need to promote respect for the law, the need to provide just punishment for the offense, and the need to deter others from similar criminality. 18 U.S.C. § 3553(a).

Calbajal-Ponce was a key participant in a significant drug-trafficking conspiracy. (Dkt. #403 ¶ 23). At the time of her arrest, she was found in possession of fifty-six pounds of methamphetamine. (Dkt. #403 ¶ 20). Then, while on bond, Calbajal-Ponce violated her court-ordered conditions of release. (Dkt. #403 ¶ 4). Pretrial services contacted Calbajal-Ponce's third-party custodian, her daughter, and learned that Calbajal-Ponce had taken her clothes and fled the area. (Dkt. #403 ¶ 6). A warrant issued, and about seven months later, law enforcement arrested Calbajal-Ponce in the Southern District of California. (Dkt. #403 ¶ 7). By violating her conditions of pretrial release, Calbajal-Ponce further demonstrated her lack of respect for the law. Calbajal-Ponce subsequently pleaded guilty to conspiracy to possess with the intent to manufacture and distribute methamphetamine. (Dkt. #403 ¶ 9).

The Court recognizes that Calbajal-Ponce has completed several programs while incarcerated and appears to have taken some steps toward rehabilitation. And the Court commends her for doing so. But Calbajal-Ponce has been incarcerated a relatively short amount of time. She has only completed approximately 21% of her sentence and still has more than eleven years remaining before she is scheduled for release. Calbajal-Ponce fails to show how her release, after about three-and-a-half

years into a sentence of more than seventeen years for a serious drug crime, reflects the nature of her offense, promotes respect for the law, and provides just punishment. Considering all the relevant factors, the Court concludes that the sentence originally imposed remains sufficient, but not greater than necessary, to comply with the purposes of Section 3553(a). Calbajal-Ponce's motion is also denied on this basis.

### III. CONCLUSION

For the foregoing reasons, Defendant Maria Calbajal-Ponce's Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A), (Dkt. #535), is **DENIED**.

**So ORDERED and SIGNED this 28th day of April, 2022.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE